IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GUSSIE FORD *obo* T.T., | ) | CASE NO. 1:12-CV-25 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("the "Commissioner" or "Defendant") denying Plaintiff Gussie Ford's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, [42 U.S.C. § 1381](#) *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons stated below, the undersigned recommends the decision of the Commissioner be AFFIRMED.

I. INTRODUCTION & PROCEDURAL HISTORY

Plaintiff, Gussie Ford ("Plaintiff" or "Ford"), on behalf of her child, T.T., protectively applied for Supplemental Security Income benefits on August 20, 2007, alleging T.T. became disabled August 7, 2002. (Tr. 17, 52, 100-02). Plaintiff alleges T.T. is disabled because he suffers from hyperactivity (i.e. attention deficit hyperactivity disorder ("ADHD")) and has trouble focusing and completing tasks. (Tr. 114). The Social Security Administration denied Plaintiff's applications for benefits initially and upon reconsideration. (Tr. 52-53). Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of her

application. (Tr. 66-68). The administration granted Ford's request and scheduled a hearing. (Tr. 69-72).

On April 6, 2010, Administrative Law Judge John Murdock (the "ALJ") convened a hearing via video to evaluate Plaintiff's application. (Tr. 31-50). Plaintiff, T.T. and counsel appeared in Cleveland, Ohio, and the ALJ presided over the proceeding from Falls Church, Virginia. (Tr. 17). Prior to hearing testimony, the ALJ confirmed with counsel that there were no further records that needed to be added to the record. (Tr. 35). The ALJ then heard testimony from Plaintiff and T.T. (Tr. 31-50).

On April 29, 2010, the ALJ issued an unfavorable decision denying Plaintiff's application for benefits. (Tr. 17-27). Subsequently, Plaintiff sought review of this decision from the Appeals Council. (Tr. 11-12). However, the council denied Plaintiff's request, thereby making the ALJ's ruling the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL & MEDICAL EVIDENCE[1]

### A. Personal & Educational

T.T. was born on August 7, 2002, and was seven years old and in the first grade on the date of his hearing before the ALJ. T.T. has lived with Ford since birth. (Tr. 40). She obtained temporary custody of T.T. for three months, but eventually gained full legal custody of the child. (Tr. 35, 40). Ford testified that T.T. has always been very hyperactive. (Tr. 41-42). Plaintiff shared these concerns with T.T.'s doctor, Dr. Gwen K. Glazer, who eventually referred T.T. to see Dr. Eleanor Gottesman, a psychiatrist. (Tr. 40-41). During pre-school and elementary

---

[1] The following recital is merely an overview of the evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

school, T.T. displayed disruptive behavior and often engaged in fights with other children. (Tr. 42-43).

On March 6, 2008, Plaintiff's kindergarten teacher, Ms. Shannon Morris, completed a Teacher Questionnaire asking her to evaluate T.T.'s abilities in the six categories of functioning pertinent to child disability cases.[2] Ms. Morris indicated she did not observe T.T. to display any problems in the area of moving about and manipulating objects. (Tr. 284). However, she found T.T. generally exhibited "slight problems" in the domains of acquiring and using information and interacting and relating with others. (Tr. 281, 283). She commented that T.T. would often ask her to repeat directions and complete only the "bare minimum" of work required. (Tr. 281). Additionally, Ms. Morris noted that T.T. demonstrated "slight" to "obvious" problems in the domains of attending and completing tasks and caring for himself. (Tr. 282, 285). With regard to caring for himself, Ms. Morris explained that T.T. "often need[ed] help gathering and packing up his personal belongings" and "grumble[d] loudly" when something did not go his way. (Tr. 285). The teacher also observed that T.T. was able to demonstrate more self control in the mornings than in the afternoons. (*Id*.). The questionnaire did not ask Ms. Morris to rate T.T.'s functioning in the domain of health and physical well-being. (Tr. 286). Instead, Ms. Morris commented on T.T.'s functioning in this area by acknowledging that she was aware that he had been prescribed medication for his ailments. (*Id.*). Ms. Morris was not aware of whether T.T. took the medication on a regular basis, but confirmed that T.T.'s functioning changed after taking the medication. (*Id.*). The teacher also noted that T.T. had a tendency to pick at his skin and lips until they bled. (*Id*.).

---

[2] *See* Section III, *infra*.

On May 28, 2008, Ms. Morris completed another questionnaire assessing T.T.'s level of functionality in school.  (Pl.'s Br., Ex. A at pp. 4-5).  This report was not part of the record evidence presented to the ALJ.  In this assessment, Ms. Morris was again asked to evaluate T.T. in each of the six relevant domains.  Again, Ms. Morris reported that T.T. suffered from "slight problems" in the areas of acquiring and using information and interacting and relating to others. (*Id*. at p. 4).  However, Ms. Morris concluded Plaintiff's functionality in the domains of attending and completing tasks and moving about and manipulating objects had deteriorated and become "serious problems".  (*Id*. at pp. 4-5).  But, Ms. Morris downgraded T.T.'s limitations in the area of caring for himself to only a "slight problem".  (*Id*. at p. 5).  Finally, with respect to his ability to care for his health and physical well-being, Ms. Morris commented, "[w]hen [T.T.] does not take his medication he is very distracted and fidgety."  (*Id*.).

T.T. did not progress to the first grade at the conclusion his kindergarten school year. (Tr. 42).  According to Ford, she and Dr. Gottesman decided it was best for T.T. to repeat kindergarten given his disruptive behavior throughout the school year.  (*Id*.).

### B.  Medical

Ford and T.T. presented to T.T.'s physician, Dr. Glazer, with complaints of T.T. being overly active in August 2007.  (Tr. 192).  Ford reported that T.T.'s biological mother took methadone while she was pregnant with T.T.  (*Id*.).  Dr. Glazer also noted T.T. was very hyperactive during the appointment and prescribed the child adderall.  (*Id*.).  Dr. Glazer eventually referred T.T. to be treated by Dr. Gottesman, a child psychiatrist.

On December 17, 2007, T.T. presented to Dr. David House for a consultative psychological examination.  (Tr. 215-18).  In discussing T.T.'s background with Dr. House, Ford indicated Plaintiff was born premature weighing four pounds and one ounce, and that she was

4

given custody of him from the time T.T. left the hospital. (Tr. 216). Ford also reported that T.T. did not get along well with other children and did not respond well to discipline or rules. (*Id.*). Ford stated that she received calls from T.T.'s school roughly twice a week regarding his behavior. (*Id.*). At the time of the examination, T.T. was prescribed focalin to treat his symptoms, but Ford complained that its effects did not last for long. (*Id.*). During the exam, Dr. House observed that T.T. was restless and that his concentration and attention were moderately deficient. (Tr. 217).

In summarizing his conclusions, Dr. House diagnosed T.T. with obsessive compulsive disorder, ADHD and neglected child in the past. (*Id.*). Dr. House commented that T.T.'s condition "appear[ed] chronic." (*Id.*). The doctor rated T.T.'s concentration, attention and socialization skills as falling between the 1st and 5th percentiles; T.T.'s intellectual skills scored near the 10th percentile and his motor skills appeared to be within the 10th to 15th percentiles. (*Id.*). Dr. House ultimately opined that T.T. suffered from hyperactivity and compulsivity, which Dr. House noted were "serious in nature." (Tr. 218). Although Dr. House believed T.T.'s functionality was seriously to moderately impaired, the doctor noted Plaintiff's functionality in school was improving to some degree. (*Id.*).

On March 13, 2008, Plaintiff's psychiatrist, Dr. Gottesman, formally assessed T.T.'s mental functionality. (Tr. 265-67). Dr. Gottesman indicated T.T.'s thought content, mood and affect were normal except that he suffered from a short attention span. (Tr. 266). Likewise, T.T.'s intellectual abilities appeared within normal limits, but his ability to maintain concentration, persistence and pace were poor. (*Id.*). Additionally, Dr. Gottesman remarked that T.T. exhibited impulsivity when off his medication. (*Id.*). With respect to T.T.'s behavioral problems, the doctor commented that T.T. was oppositional and disruptive in school and violent

at times, but Dr. Gottesman noted these behaviors decreased when T.T. took his medication. (*Id*.).

Dr. Gottesman found Plaintiff was able to care for himself "when forced". (Tr. 267). The doctor commented that T.T. "was being babied by [his] adoptive mom; [but was] doing better". (*Id*.). Although T.T. tended to boss others around, Dr. Gottesman noted that he did have friends, and was compliant with his medication and appointments. (*Id*.). Dr. Gottesman opined that T.T. has "always" suffered from these symptoms, and she was currently in the process of adjusting his medications. (*Id*.). She noted T.T. initially did well on his medication, but the dosage prescribed caused some paranoia leading her to reduce the dosage which consequently reduced its effectiveness. (*Id*.). Therefore, she increased the dosage, and stated that she "need[ed] more time to see how well it [was] working". (*Id*.).

On June 25, 2008, Dr. Gottesman completed a second assessment of T.T.'s functionality. (Pl.'s Br. Ex. 2 at pp. 3-5). This report, like Ms. Morris' second report, was not included as an exhibit in the evidence presented to the ALJ. At the time of its writing, Dr. Gottesman indicated T.T. was currently taking adderall for his symptoms, however, she commented that he was experiencing "major difficulties". (*Id*. at p. 3). She stated that "focalin helped a bit, but [was] not excellent, [and that] now Adderall so far [was] not working". (*Id*.).

This report also listed Dr. Gottesman's assessment of T.T. in each of the six pertinent domains. The doctor found Plaintiff did not have any problems with moving about and manipulating objects. (*Id*. at p. 5). But, she opined T.T. suffered from a "serious problem" in the areas of acquiring and using information and attending and completing tasks. (*Id*. at p. 4). The doctor commented that Plaintiff required one on one instruction to stay focused on tasks both at home and at school. (*Id*.). Likewise, she found T.T. exhibited "serious problems" in the

6

domain of interacting and relating to others. (*Id*.). Dr. Gottesman noted that T.T. acted like a younger child, fought in school and did not share. (*Id*.). However, she noted Ford was setting firmer limits at home. (*Id*.). With regard to caring for himself, Dr. Gottesman indicated T.T. had a "very obvious problem" with handling frustration appropriately and exercising patience, but no problems with caring for his physical needs and hygiene. (*Id*. at p. 5). Dr. Gottesman did not rate T.T.'s ability in the area of health and physical well-being, other than to comment that he was taking adderall for his ADHD. (*Id*.). Dr. Gottesman's final comments note that T.T. was a "demanding child for whom only now [we]re appropriate limits being set. Will need time to see[;] Also, currently youngest in class[,] will be held back which should help." (*Id*.).

### III.  STANDARD FOR CHILDHOOD SSI CASES

A child under age eighteen will be considered disabled if he/she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). Childhood disability claims involve a three-step process evaluating whether the child claimant is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the child claimant is working. If not, at step two the ALJ must decide whether the child claimant has a severe mental or physical impairment  Third, the ALJ must consider whether the claimant's impairment(s) meet or equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. An impairment can equal the listings medically or functionally. 20 C.F.R. § 416.924.

A child claimant medically equals a listing when the child's impairment is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Yet, in order to medically equal a listing, the child's impairment(s) must meet all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how

7

severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

A child claimant will also be deemed disabled when he or she functionally equals the listings.  The regulations provide six domains that an ALJ must consider when determining whether a child functionally equals the listings.  These domains include:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and,

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).  In order to establish functional equivalency to the listings, the claimant must exhibit an extreme limitation in at least one domain, or a marked impairment in two domains.  20 C.F.R. § 416.926a(d).

The regulations define "marked" and "extreme" impairments:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

During the evaluation of a child disability claim, the ALJ must consider the medical opinion evidence in the record. 20 C.F.R. § 416.927. A treating physician's opinions should be given controlling weight when they are well-supported by objective evidence and are not inconsistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2). When the treating physician's opinions are not given controlling weight, the ALJ must articulate good reasons for the weight actually assigned to such opinions. *Id.* The ALJ must also account for the opinions of the non-examining sources, such as state agency medical consultants, and other medical opinions in the record. 20 C.F.R. § 416.927(e)(2)(i-ii). Additionally, the regulations require the ALJ to consider certain other evidence in the record, such as information from the child's teachers, 20 C.F.R. § 416.926a(a), and how well the child performs daily activities in comparison to other children the same age. 20 C.F.R. § 416.926a(b)(3)(i-ii).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence and whether, in making that decision, the Commissioner employed the proper legal standards. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" has been defined by the Sixth Circuit as more than a scintilla of evidence, but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if a reasonable mind could accept the record evidence as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* While the Court has discretion to consider the entire record, this Court does not determine

whether issues of fact in dispute would be decided differently, or if substantial evidence also supports the opposite conclusion. The Commissioner's decision, if supported by substantial evidence, must stand. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff asserted two assignments of error challenging the ALJ's ruling. First, Plaintiff argues that remand is necessary in order for the ALJ to consider new evidence which was not in the record at the time of the hearing. As a result, Plaintiff contends that in light of this new evidence, substantial evidence proves T.T.'s impairments functionally equal listing level and therefore render him disabled. Because the undersigned finds Plaintiff has not shown proper cause to remand this case for consideration of this new evidence, there is no need to address Plaintiff's second objection.

Judicial review of an ALJ's disability ruling is limited to a review of the evidence which was before the adjudicator at the time of the decision. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir 1993). The Court cannot reverse an ALJ's decision based on the existence of evidence which was not before the ALJ. *Id*. However, sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of additional evidence under certain circumstances. 42 U.S.C. § 405(g) states in pertinent part:

> . . . The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. § 405(g).

The Sixth Circuit has interpreted this statute as creating three requirements to warrant remand for consideration of additional evidence. *Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711-13 (6th Cir. 1988)*; *Cotton, 2 F.3d at 695*. First, the claimant must submit evidence that is *new*. "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Elliot v. Apfel, 28 F. App'x 420, 423 (6th Cir. 2002)*. Second, the evidence must be *material*. To satisfy this burden, the claimant must "demonstrate that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore, 865 F.2d at 711*. Third, the claimant must show *good cause* exists for her failure to incorporate the evidence in a prior proceeding. *Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 549 (6th Cir. 2002)*. When these three requirements are met, it is proper for the court to remand to permit consideration of the additional evidence.

In the case *sub judice*, Plaintiff requests the Court to remand this case so that the ALJ may consider the subsequent reports completed by T.T.'s teacher, Ms. Morris and his psychiatrist, Dr. Gottesman. Unfortunately for Plaintiff, she has failed to show that remand is warranted pursuant to the requirements set forth in 42 U.S.C. § 405(g).

### 1. Good Cause

To begin, Ford has not shown good cause for her failure to present these documents to the ALJ. Plaintiff contends these reports were submitted to the administration via fax nearly a

year and a half prior to Plaintiff's hearing.[3] Plaintiff also contends that because these records were included in Ford's "in-house" file retained at counsel's offices, Plaintiff assumed that the evidence was contained within the electronic file before the ALJ. Furthermore, Plaintiff argues that usually evidence submitted to the administration by electronic means is included in the official record of evidence. In addition, Plaintiff submits that the attorney who represented her at the hearing *may* not have had knowledge of these reports, although that attorney and Plaintiff's present counsel are employed by the same firm.

None of the reasons set forth by Ford amount to showing *good cause* for the failure to present these records at an earlier time. During the hearing, the ALJ questioned counsel regarding the exhibits in the record, and asked if Plaintiff had any records to add to the file. *See* (Tr. 35). This was Plaintiff's opportunity to verify whether the records contained in counsel's "in-house" file corresponded with those in the administrative record before the ALJ. The failure to conduct this inquiry cannot now be framed as "good cause" to justify remand to consider this additional evidence. Ford was represented by counsel at the hearing, and therefore, it was reasonable for the ALJ to presume that she had presented her best case to the ALJ. *Delgado,* 30 F. App'x at 549 (*citing Sears v. Sec'y of Health & Human Servs.,* 840 F.2d 394, 402 (7th Cir. 1988)). Had counsel properly conducted this inquiry, counsel could have requested the ALJ to

---

[3] The undersigned notes that Plaintiff submitted copies of the fax confirmation sheets allegedly generated after Plaintiff faxed Ms. Morris' and Dr. Gottesman's assessments to the Social Security Administration. *See* (Pl.'s Br., Exs. A & B). But, Plaintiff did not present the Court with any evidence showing that the fax number listed on the confirmation sheets corresponded with a fax number used to submit information to the administration. Interestingly, the Commissioner submits that Plaintiff faxed this evidence to an improper destination, as other of Plaintiff's records, where were properly included in the record, were faxed to a different number than these exhibits. *Compare* Tr. 99, 214, 264 *with* Pl.'s Br., Exs. A at p. 1 & B at p. 1.

leave the record open for a period of time in order to permit the submission of these reports. *See Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (finding good cause not shown where counsel failed to "seek to have the record remain open until such time as other evidence could be made a part of the record").

2. New

Neither can Ford show that these records are new. Evidence is only new if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *see also Delgado*, 30 F. App'x at 549. Because both reports at issue were created in 2008, clearly both were in existence at the time of Ford's hearing before the ALJ in 2010. Thus, they do not constitute as *new* evidence. *Elam v. Astrue*, No. 3:11CV00234, 2012 WL 2409218, at *9 (S.D.Ohio June 26, 2012) (*R&R adopted*, 2012 WL 4483422) ("Because this evidence pre-dates the ALJ's decision, it is not new and does not support Plaintiff's request for a remand under sentence six of 42 U.S.C. 405(g).").

Furthermore, these reports cannot be considered as new because they are largely cumulative of the evidence already in the record. New evidence cannot be cumulative of evidence already existing in the record. *Elliott,* 28 F. App'x at 423. With respect to Ms. Morris, the findings issued in her May 2008 report – to which the ALJ was not privy—were already substantially accounted for in the record presented to the ALJ. Specifically, Ms. Morris' evaluation of T.T. in the areas of acquiring and using information, interacting and relating to others, caring for himself and health and physical well-being was consistent with her prior assessment of T.T. – which was before the ALJ. *Compare* Tr. 280-87 *with* Pl.'s Br., Ex. A at pp. 4-5. Although Ms. Morris' subsequent report indicated that T.T.'s impairments in the domains of attending and completing tasks and moving about and manipulating objects had further

13

deteriorated, these observations were not material. As discussed in further detail below, in order to warrant remand new evidence must have a reasonable probability of causing the ALJ to reach a different ruling. Though Ms. Morris' second report found T.T. struggled from a "serious problem" in attending and completing tasks, the ALJ agreed that the child suffered from a marked limitation in this domain. Likewise, although Ms. Morris' latter report showed that T.T. suffered from a "serious problem" in moving about and manipulating objects, this evidence does not persuade the undersigned that the ALJ would have ruled differently. As the ALJ noted, T.T.'s medical record was "devoid of any record showing the claimant ha[d] any form of limitation in this domain." (Tr. 25). In fact, neither Dr. Gottesman nor Dr. House indicated Plaintiff suffered from any problems in this area of functioning. (Tr. 214-18, 265-67, Pl.'s Br., Ex. B at p. 5).

 Similarly, the undersigned finds that Dr. Gottesman's latter report is also merely cumulative of the evidence that was already before the ALJ. The medical information presented in this report showed that T.T. had severe problems with learning, concentrating, focusing and interacting with others. But, these observations were previously noted by Dr. Gottesman and Dr. House. Dr. House's report indicated that T.T. only fell between the 1st and 5th percentiles in the domains of concentration and attention and in socialization. (Tr. 217). He also noted that T.T.'s intellectual skills only fell within the 10th percentile. (*Id.*). Dr. House also specifically referenced T.T.'s problems with not getting along with others, not responding well to discipline or rules and problems with hyperactivity and compulsivity. (Tr. 217-18). Dr. Gottesman noted many of these problems in her initial report as well. (Tr. 266). Thus, the "new" report Plaintiff seeks to submit from Dr. Gottesman does not constitute as new evidence.

### 3. Material

Remand is also unnecessary because the reports in question are not material.  In order to warrant remand for consideration of additional evidence, the claimant must demonstrate "that there [i]s a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.  As previously mentioned, neither of the latter questionnaires completed by Ms. Morris or Dr. Gottesman demonstrate within a reasonable degree of certainty that the ALJ would have concluded that T.T. was disabled.  Even to the extent that these reports can be viewed as illustrating that T.T.'s functional abilities were diminishing, the ALJ identified subsequent records which showed that T.T.'s symptoms were improving.  For example, the ALJ highlighted that in December 2009 Dr. Gottesman reported that T.T. was doing well, and that despite Ford being hospitalized in March 2010, he continued to perform well in school during this time.  Consequently, the reports at issue do not lead the undersigned to believe that consideration of such would have caused the ALJ to render a different decision.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: December 27, 2012.

15

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).